IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LOUIS T. TRUJILLO,

        Plaintiff,

vs.                                                                                                                                                                            No. CIV 04-0462 JC/RLP

CITY OF ALBUQUERQUE, a municipal corporation,
MARTIN CHAVEZ, in his capacity as Mayor
of Albuquerque, New Mexico and individually,
CAPTAIN CONRAD CANDELARIA and
DETECTIVE JOHN WILLIAMS, Albuquerque
Police Department, in their official capacities and as individuals,
ELLEN CONCINI and ROBERT PIERSON, Albuquerque
Planning and Zoning Commission, in their official capacities and as individuals,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

        THIS MATTER comes before the Court on *Defendants' Motion for Summary Judgment and for Qualified Immunity*, filed June 27, 2005 (*Doc. 29*). The Court, having considered the Motion, the parties' submissions, the record, and the relevant authority, finds the Motion well-taken and it is, therefore, GRANTED.

**I.**     **Background**

        In 1976, Plaintiff began operating an open-air market ("flea market") on his property located on what is now the 600 block of Old Coors Road, Southwest in Albuquerque, New Mexico ("City"). In 1980, Plaintiff applied for a conditional use permit for his flea market business. On January 31,

1980 a decision by the Zoning Hearing Examiner approved conditional use, stating that Plaintiff's flea market could not be legally operated until certain enumerated conditions had been met. On March 6, 1980 Plaintiff unsuccessfully appealed that decision to the Environmental Planning Commission. Failing to meet the required conditions, Plaintiff nonetheless continued to operate his flea market business on his property then zoned C-3. From 1980 to 1991, Plaintiff was repeatedly cited by the City for Zoning Code violations.

On January 15, 1991 the City filed a complaint for preliminary injunction to abate Zoning Code violations against Plaintiff. On October 15, 1992 a text amendment to the City's Comprehensive Zoning Code was enacted, having the effect that flea markets were no longer permitted as a conditional use on property zoned C-2 and C-3. Thus, the portion of Plaintiff's property previously eligible for conditional use was no longer qualified absent an approved application for a zone code change. Plaintiff was notified of a (1) year period following the change during which non-conforming uses could exist until application for zone change was made. Plaintiff never applied for the necessary S-U zone change.

A September 1993 inspection of Plaintiff's flea market business also revealed its impermissible expansion onto residential property. Continuing zoning violations were again exposed by a November 1993 inspection. On November 19, 1993, Plaintiff was issued a "Notice of Violation" advising him that his flea market was not a permitted use, that it was a non-conforming use requiring an S-U zone change, and ordering him to discontinue his flea market business on the property. On May 26, 1994 Plaintiff received a letter informing him that the City intended to pursue enforcement against him for failing to bring his property into compliance with the Zoning Code and failing to seek a zone change. Two inspections in early October 1995 revealed that Plaintiff remained in violation

of the Zoning Code. On October 10, 1995 Plaintiff received written notice from Zoning Inspector Joni Barth-Montanez that he was illegally operating his flea market business on property zoned C-3 and R-2, that his land use had expired as a legal land use, and that his property required an S-U1 zone change. On June 9, 1997 Plaintiff was again notified in writing of his illegal land use and was required to make application for a zone change and submit a site development plan before June 27, 1997. Plaintiff did neither. On November 13, 2003 Plaintiff received a Final Notice advising that his open air market activity continued without appropriate zone change, that the property required a zone change, and that Plaintiff must correct the violation on or before November 24, 2003 or criminal charges would be brought.

Finally, on December 15, 2003, the City filed suit in State District Court seeking injunctive relief on two bases: (1) Plaintiff violated zoning laws, and (2) operation of Louie's Flea Market was a public nuisance. On March 3, 2004 Judge Wendy York held a hearing and subsequently issued a Preliminary Injunction Order for Zoning Code Violations on March 11, 2004. On May 10 and 11, 2004 Judge York heard testimony on the Zoning Code violations for purposes of permanent injunction. Judge York issued a permanent injunction on June 24, 2004. Notably, Judge York did not reach the question of public nuisance; she issued the permanent injunction solely on the basis of the numerous and continuing Zoning Code violations. Plaintiff did not appeal the June 24, 2004 decision or request reconsideration thereof.

Between December 2003 and August 2004, the flea markets on Old Coors road, particularly Louie's, were the subject of several articles published by the Albuquerque Journal and the Albuquerque Tribune. Comments regarding reports and incidents of criminal activity at Louie's-- including fencing, drug dealing, pirating illegal CD's, and prostitution–were attributed to Defendant

3

Candelaria. Various City officials also commented in the articles about problems at Louie's involving traffic congestion, insufficient parking, jaywalking, trash, criminal activity, and continuous zoning infractions.

Plaintiff brings this action pursuant to 42 U.S.C. Sections 1983 and 1985, as well as state law, alleging violation of his rights protected by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. His claims include defamation (Count I); conspiracy (Count II); selective enforcement (Count III); malicious prosecution (Count IV); unconstitutional taking (Count V); and substantive due process violation (Count VI). Defendants presently assert qualified immunity and otherwise move the Court for summary judgment on all counts in Plaintiff's Complaint.

## II. Legal Standard

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). For purposes of a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party. *Id*. The moving party has the initial burden of showing that there is no genuine issue of material fact. *Id.* at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim, as "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986).

Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party opposing the

motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256. To meet this burden, the non-movant must specify evidence in the record and demonstrate the precise manner in which that evidence supports its claims. *Gross v. Burggraf*, 53 F.3d 1531, 1546 (10th Cir. 1995). Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Id.* If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 597.

**III.    Discussion**

    *A.    Qualified Immunity*

42 U.S.C. Section 1983 creates a cause of action against persons who, acting pursuant to state government authority, violate federal law. Municipalities are "persons" for purposes of Section 1983 litigation. *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978). Qualified immunity shields government officials from individual liability under Section 1983. Government officials performing discretionary functions "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Woodward v. City of Worland*, 977 F.2d 1392, 1396 (10th Cir. 1992) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The purpose of qualified immunity is to avoid excessive disruption of governmental functions and to resolve insubstantial claims in the early stages of litigation. *See Saucier v. Katz*, 533 U.S. 194 (2001).

Once a defendant pleads entitlement to qualified immunity, "the plaintiff bears the burden of (1) coming forward with sufficient facts to show that the defendant's actions violated a federal constitutional or statutory right, and (2) demonstrating that the right was clearly established at the

time of the conduct at issue." *Baptiste v. J.C. Penny Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998). In order to meet this strict twofold burden, "the plaintiff must articulate the clearly established constitutional right and the defendant's conduct which violated that right with specificity." *Id.* at 1255. Only if a plaintiff successfully establishes both elements of the qualified immunity test does a defendant subsequently bear the traditional summary judgment burden of showing no genuine issues of material fact exist, entitling defendant to judgment as a matter of law. *See Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000). This is so because qualified immunity is a defense against suit, and not simply liability. *See Stuart v. Jackson,* 24 Fed. Appx. 943 (10th Cir. 2001).

The individual Defendants enjoy qualified immunity in this case. As detailed below, Plaintiff has not established that their acts violated any clearly established constitutional right which would subject them to suit under Section 1983. Regarding municipal liability under Section 1983, Plaintiff asserts that the facts "support inferences of deprivation...by employees of the Mayor." Resp. at 16. For a municipality to be liable under Section 1983, however, a plaintiff "must show 'that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action.'" *Ledbetter v. City of Topeka, Kn.*, 318 F.3d 1183, 1189 (10th Cir. 2003) (citations omitted). Plaintiff apparently confuses Section 1983 with the New Mexico Tort Claims Act when arguing that municipal liability is available through a theory of supervisory liability. Yet the starting point for the analysis is that "liability under 42 U.S.C. 1983 cannot be based on the doctrine of *respondeat superior."* *Gallegos v. State*, 107 N.M. 349, 353 (1987) (Citing *Monell v. Dep't of Social Services*, 436 U.S. 658). While a supervisor may be liable for personal involvement in an alleged violation under certain circumstances not alleged here, such liability is not present solely by

6

virtue of an employment relationship. *See, e.g., Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992) ("allegations of personal direction or of actual knowledge and acquiescence" required for supervisory liability.)  Under the governing law, Plaintiff has simply failed to establish any basis for municipal liability under Section 1983.

### B. New Mexico Tort Claims Act

Defendants move for summary judgment on Plaintiff's claims grounded in New Mexico state tort law, relying on factual deficiencies in Plaintiff's claims as well as the New Mexico Tort Claims Act ("Act").  Relevant portions of the Act are Sections 41-4-4(A) pertaining to immunity from tort liability, and 41-4-12 addressing the liability of law enforcement officers.  The Act itself carves out exceptions to the general immunity and allows certain suits against state law enforcement officers.

### C. Count I: Defamation

Plaintiff asserts a defamation claim against Defendants Captain Candelaria and Detective Williams of the Albuquerque Police Department (APD), alleging the officers told reporters and other third parties that Plaintiff was engaged in criminal activity, and in so doing cast his business in a false light and maligned his reputation.  Compl. at ¶ 45.  Plaintiff further contends that third parties published the "defamatory allegations" and that third parties believed the officers' allegations were true.  *Id.* at ¶¶ 48.  Plaintiff seeks recovery under both 42 U.S.C. §1983 and the New Mexico Tort Claims Act.  *Id.* at ¶¶ 46, 49.

Plaintiff accurately identifies that Section 41-4-12 of the Act applies to waive tort immunity from suit for defamation against Captain Candelaria and Detective Williams.  However, Plaintiff's state law defamation claims against Defendants Candelaria and Williams lack the necessary factual

7

support in the record to resist summary judgment and, for the reasons discussed below, are properly dismissed as a matter of law.

The state tort of defamation includes the necessary elements defined in NMRA 13-1002. They are: "[a] defamatory communication published by the defendant, to a third person, of an asserted fact, of and concerning the plaintiff, and proximately causing actual injury to the plaintiff." *Clough et al. v. Adventist Health Systems, Inc. et al.*, 108 N.M. 801 (1989). Thus, Plaintiff cannot successfully pursue claims for defamation unless he demonstrates that Defendants Candelaria and Williams in fact published a communication. *Id., Fikes v. Furst*, 2003 N.M. 33 (2003).

In support of his claims, Plaintiff relies entirely on the series of newspaper articles published in the Albuquerque Journal and the Albuquerque Tribune. Pl's Resp., Ex. 5. The newspaper articles, however, are not competent summary judgment evidence because they are unsupported hearsay. Moreover, even if the Court were inclined to consider the articles competent summary judgment evidence despite their hearsay status, none of the articles even mentions Defendant Williams. Apparently, Plaintiff expects the Court to take his subjective belief that Williams defamed him, without more, to find a genuine issue of material fact exists as to whether or not Defendant Williams actually defamed him. Plaintiff has failed to establish a communication by Williams and this deficiency is fatal to Plaintiff's claim against him.

Regarding Defendant Candelaria, the Court finds that Plaintiff has not produced any competent summary judgment evidence establishing that Defendant Candelaria made defamatory statements either. Again, the newspaper articles are unsupported hearsay. Additionally, Plaintiff has produced not a scintilla of evidence indicating that the statements he believes defamed him were false. To the contrary, the only evidence before the Court in this regard is sworn testimony from the state

8

court proceeding establishing the truthfulness of the communications. Plaintiff's claim against Candelaria must be dismissed for want of competent evidence establishing a communication or lack of veracity.

Turning to Plaintiff's theory of recovery for defamation under Section 1983, the Court has strained to identify a viable constitutional claim in this count. Based on the pleadings, Plaintiff's defamation claim under 42 U.S.C. § 1983 might reasonably be interpreted as intending to allege a violation of a liberty interest under the Due Process Clause of the Fourteenth Amendment. Because there exists no constitutional claim for defamation itself, the Court will apply the four-part test for determining whether statements allegedly made infringe upon a protected liberty interest, thus implicating Section 1983.

The Tenth Circuit has addressed such claims where a plaintiff alleges infringement of "a liberty interest in [one's] good name and reputation as it affects [one's] property interest in continued employment." *Stidham v. Peace Officer Standards And Training*, 265 F.3d at 1153.

> First, to be actionable, the statements must impugn the good name, reputation, honor or integrity of the [plaintiff]. Second, the statements must be *false*. Third, the statements must...foreclose other employment opportunities....fourth, the statements must be published.

Id. (citing *Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994)) (emphasis added). First, as discussed, *supra,* Plaintiff has cannot establish that any statements were false. Moreover, even if Plaintiuff had mustered sufficient evidence to create a genuine issue regarding falsity, the Supreme Court instructs that damage to one's reputation alone is not enough to implicate due process protections. *Paul v. Davis*, 424 U.S. 693, 701(1976); *Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1558 (10th Cir. 1993). "Stigmatization or reputational damage alone, no matter

9

how egregious, is not sufficient to support a 1983 cause of action." *McGhee v. Draper*, 639 F.2d 639, 643 (10th Cir. 1981). *See also Medina v. City and County of Denver*, 960 F.2d 1493, 1495 (10th Cir. 1992) ("The Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the States.") (quoting *Paul v. Davis*, 424 U.S. at 701).

Plaintiff acknowledges that only "where the stigmatization results in the inability to obtain other employment does this type of claim rise to a constitutional level." *Allen v. Denver Public School Bd.*, 928 F.2d 978, 982 (10th Cir. 1991). In an attempt to overcome this hurdle, Plaintiff implies that termination of his employment as owner-operator of the flea market suffices to meet this requirement. Mem. in Support of Pl's Resp. at 7. Instead, the Court finds Plaintiff has alleged no damages outside the realm of possible reputational damage. Additionally, the Court agrees with Defendants position that the true nature of the harm complained of here is the permanent injunction requiring Plaintiff to cease his flea market operations for noncompliance with zoning regulations. Indeed, the alleged harm is the result of judicial action taken by the State District Court and, as such, involves issues over which this Court lacks jurisdiction. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The *Rooker-Feldman* doctrine operates to preclude collateral attack of the state judgment in federal court, providing additional reasons why this claim must fail. *Id.*

Insofar as Plaintiff's defamation claim rests solely on purported reputational damage, the Court finds that Section 1983 provides no remedy for the alleged wrongdoing. Regarding Plaintiff's inability to find employment, there is no factual support for such a contention. To the contrary, the state court determination specifically articulates that Plaintiff may apply to lift the injunction it issued if he becomes compliant with governing zoning regulations. Thus, Count One of Plaintiff's

Complaint is properly dismissed.

*D.     Count II:  Conspiracy*

Pursuant to 42 U.S.C. Section 1985, Plaintiff seeks recovery for alleged conspiracy between "Captain Candelaria and Mayor Chavez, or those under the Mayor's control, to formulate for dissemination to the press the defamatory allegations complained of, and to generate false or misleading statistics to include in the City's Complaint." Compl. at ¶¶ 51, 52. Section 1985, however, requires a plaintiff to allege *and prove* the existence of a "class-based discriminatory animus" in order to state a claim under federal law. *Lessman v. McCormick*, 591 F.2d 605, 608 (10th Cir. 1979). Plaintiff has alleged no discriminatory animus that the Court can discern and fails to support his conclusory allegations with facts showing concerted action or agreement between Candelaria and Mayor Chavez. This claim is dismissed as a matter of law.

*E.     Count III:  Selective Enforcement*

Next, Plaintiff asserts that Defendants engaged in selective enforcement of zoning ordinances against him. Plaintiff states that "Defendants enforced statutes or ordinances against Plaintiff, but not against a flea market 150 feet away from Plaintiff's." Compl. at ¶ 55. The essence of this claim is equal protection, presumably the class-of-one variety. The flea market Plaintiff contends received differential treatment is the Star Flea Market on Old Coors.

The Equal Protection Clause of the Fourteenth Amendment requires fairness in the application of government regulation. Extensive constitutional analysis is unwarranted, however, as Plaintiff's claim is forestalled by Defendants' unrebutted evidence that the Star Flea Market voluntarily ceased and desisted from its operations after the City brought a similar lawsuit against it. Pierson Aff., Mot., Ex. B.

### F.       Count IV:  Malicious Prosecution

Plaintiff further contends that Defendants' actions in prosecuting the City's Complaint were made with "full knowledge that no colorable legal basis existed for prosecuting a claim against Plaintiff on one or both counts of the City's complaint."  Compl. at ¶ 60.  In support of this claim, Plaintiff asserts that Defendants used false or misleading statistics to influence Judge York's decision on the permanent injunction and that the nuisance allegations were determined to be meritless.

Insofar as Plaintiff intends to assert a state tort law claim in this count, the Court again determines that Plaintiff has failed to identify a viable claim against any Defendant except Captain Candelaria or Detective Williams, for the Act does not waive immunity for the others.  Next,  New Mexico recognizes a cause of action not for malicious prosecution, but for "malicious abuse of process"  *Devaney v. Thriftway Marketing Corp.*, 124 N.M. 512 (1998) (restating the elements of abuse of process and malicious prosecution as a single, hybrid cause of action).  Malicious abuse of process requires: (1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages.  *Id.*

The Tenth Circuit recognizes a cause of action under Section 1983 for malicious prosecution. *See Pierce v. Gilcrest*, 359 F.3d 1279 (10th Cir. 2004).  In this analysis, state law provides the "starting point" for a constitutional claim of malicious prosecution or abuse of process.  *Taylor v. Meacham*, 82 F.3d 1556, 1561-62 (10th Cir. 1996).  The *Gilcrest* decision, however, dictates that "federal courts fashioning constitutional analogues to traditional common law torts should refer to the general common law tradition, rather than to the law as defined by the jurisdiction where the

action originated." *Pierce v. Gilcrest*, 359 F.3d at 1289.

That said, extensive analysis applying the elements of New Mexico's malicious abuse of process *or* those of the more traditional tort of malicious prosecution is unwarranted. In support of this claim, whatever one labels it, Plaintiff relies heavily on his fatal misapprehension that the state court found no merit in the public nuisance claim brought against him by the City. This is a fallacy, for Judge York's Findings and Conclusions are undisputably clear: the state court did not pass on the nuisance claim because ample grounds to issue the permanent injunction were found in the continuous Zoning Code violations. It was unnecessary for Judge York to consider the nuisance claim and it cannot be legitimately inferred that she found no merit in the allegations. Further, the Court finds no evidence supporting any of the remaining, bald allegations Plaintiff makes in asserting this claim. There is no ground upon which this claim can be sustained, and it is dismissed as a matter of law.

### G.     Count V:  Unconstitutional Taking

Plaintiff claims that Defendants effected a taking of his property without just compensation contrary to his rights guaranteed by the Fifth Amendment. Evidently Plaintiff believes that the October 15, 1992 text amendment to the City's Zoning Code effected the value of his property in such a way as to create an unconstitutional taking. This claim is wholly without merit.

Under Supreme Court takings jurisprudence, an impermissible taking occurs in two situations: 1) as the result of a physical invasion of property, or 2) when a regulation substantially diminishes the value of the property to the point that it is no longer economically viable. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982); *Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992). When examining a regulation to determine if it constitutes an impermissible taking of a

landowner's property, courts should weigh the character of the government action, the impact of the action, and the effect on the landowner's expectations. *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978). In this instance, it is impossible to effectively implement the test because Plaintiff did not apply for a zone change, a recourse that was and remains available to him. Consequently, the Court cannot determine what, if any, impact the Zoning Code change in fact had on his land value; Plaintiff might have been able to continue his business had he applied for a change and otherwise met the City's requirements. What is clear, however, is that even a denial of his application for a zone change would not give rise to a cause of action for impermissible taking because Plaintiff still has his land, it is still economically valuable, and it is still usable for other purposes. To the extent that Plaintiff has not applied for a zone change, his claim is not ripe. Insofar as such application might be denied, Plaintiff's claim could not survive the balancing test. For these reasons, a viable takings claim is unavailable to Plaintiff.

        *H.      Count VI:  Substantive Due Process Violation*

Finally, Plaintiff alleges that by tortious actions, Defendants deprived him of his right to quiet enjoyment of his property, his property interest in his flea market business and personal reputation, and his property right to income generated by his flea market. Plaintiff further asserts that Defendants' actions are not rationally related to traditional police power enjoyed by municipalities regarding zoning or nuisance abatement, but were instead invidiously discriminatory.

Substantive due process refers to the Fourteenth Amendment's prohibition of government action that deprives "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, 1. The substantive component of the Due Process Clause "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them."

14

*Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Federal courts, reluctant to become zoning boards of appeal, have disagreed as to a landowner's rights to a substantive due process claim in federal court. As a result, wide variation exists among the circuits as to the standard of review applicable to substantive due process claims in the land-use context. *See* Pamela A. Mehrbani, Substantive Due Process in the Land-Use Context: The Need for a Simple and Intelligent Standard of Review, 35 Envtl. L., 209 (2005).

The Tenth Circuit has adopted both the "entitlement rule" and the "arbitrary and capricious" standard. *Norton v. Village of Corrales*, 103 F.3d 928 (10th Cir. 1996) (affirming a zoning commission's denial because plaintiff landowner had no entitlement to the plat approval sought, and in the alternative, because the commission's decision was not arbitrary or capricious).

The entitlement approach focuses on identifying a specific property interest sufficient to trigger substantive due process rights. Here, because the Zoning Commission's authority to implement Comprehensive Zoning Code changes is discretionary, there is no entitlement to a particular Zoning Code. Nor, undeniably, is there entitlement to continued land-use that violates Zoning Code regulations.

The arbitrary and capricious standard examines the actions of the agency. It cannot be reasonably said that any action by the Zoning Commission had a purpose bearing "no conceivable relationship to the exercise of the state's traditional police power through zoning." *Norton v. Village of Corrales*, 103 F.3d at 932. For these reasons Plaintiff's claims in Count VI must fail as a matter of law.

**III.   Conclusion**

In summary, Plaintiff has failed to identify a viable federal constitutional or statutory cause

of action, and each of Plaintiff's state law claims fail on tort immunity grounds, factual insufficiency, or both. Therefore, Plaintiff's complaint is dismissed in its entirety with prejudice.

WHEREFORE,

**IT IS ORDERED** that *Defendants' Motion for Summary Judgment and For Qualified Immunity*, filed June 27, 2005 (*Doc. 29*) is GRANTED.

Dated this 25th day of August, 2005.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

    Winter Laite, Esq.
    Albuquerque, NM

Counsel for Defendants:

    Robert M. White, Esq.
    Paula I. Forney, Esq.
    City of Albuquerque, NM